# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF GEORGIA
# BRUNSWICK DIVISION

MICHAEL SHELLY BAKER, JR.,

    Plaintiff,

v.

DR. JEFFREY GUNDERSON; TAMMY BROOKS; TAIWANA HALL; and DONNICE JURAN,

    Defendants.

CIVIL ACTION NO.: 2:16-cv-37

**ORDER and MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Plaintiff, who is currently housed at Georgia State Prison in Reidsville, Georgia, filed a 42 U.S.C. § 1983 action, contesting certain conditions of his confinement while he was housed at the Glynn County Detention Center in Brunswick, Georgia. (Doc. 1.) On September 20, 2017, Defendants Brooks, Hall, and Juran ("Defendants") filed a Motion for Summary Judgment. (Doc. 57.) The Clerk of Court mailed a Notice to Plaintiff advising him that Defendants filed a Motion for Summary Judgment and that a response must be filed by October 11, 2017. (Doc. 58.) That Notice further advised Plaintiff that:

> 1.    If you do not timely respond to this motion . . . , the consequence may be that the Court will deem the motion unopposed, and the Court may enter judgment against you.
>
> 2.    If your opponent's Statement of Material Facts sets forth facts supported by evidence, the Court may assume that you admit all such facts unless you oppose those facts with your own Statement of Material Facts which also sets forth facts supported by evidence.
>
> 3.    If a summary judgment motion is properly supported, you may not rest on the allegations in your [Complaint] alone.

(Id.)

Plaintiff filed no Response to Defendants' Motion for Summary Judgment[1], and the Court received no indication this Notice or Defendants' Motion was undeliverable. However, "the district court cannot base the entry of summary judgment on the mere fact that the motion [is] unopposed but, rather, must consider the merits of the motion." United States v. One Piece of Real Property Located at 5800 SW 74th Ave., Miami, Fla., 363 F.3d 1099, 1101 (11th Cir. 2004) (citation omitted). Specifically, the court "must still review the movant's citations to the record to determine if there is, indeed, no genuine issue of material fact." Mann v. Taser Int'l, Inc., 588 F.3d 1291, 1303 (11th Cir. 2009) (citation omitted).

Based on the reasons which follow, I **RECOMMEND** the Court **GRANT** Defendants' unopposed Motion, **DISMISS** Plaintiff's claims against these Defendants, and **DENY** Plaintiff *in forma pauperis* status on appeal. The Court **DENIES** Plaintiff's Motion to Compel and his Motion to Appoint Counsel. (Docs. 65, 66.)

## BACKGROUND[2]

Plaintiff submitted this Complaint regarding the conditions of his confinement while he was housed at the Glynn County Detention Center during February through March 2016. (Doc. 1-3, pp. 5–6.) Plaintiff alleges that, on February 11, 2016, at 9:45 a.m., while in the Detention Center's medical unit, he fell in his own urine due to having a fractured left elbow and a broken left hip socket. (Id. at p. 6.) Plaintiff cried out for help. However, Defendants Taiwana Hall, a medical assistant; Jeffrey Gunderson, the doctor at the Detention Center; Donnice Juran,

---

[1] As discussed below, Plaintiff did file pleadings after Defendants filed their Motion for Summary Judgment; however, these documents are not responsive to Defendants' Motion.

[2] The recited allegations are taken from Plaintiff's Complaint. However, this is not to say the Court accepts the allegations contained in Plaintiff's Complaint as true. Defendants offer their version of events through their Motion and Statement of Material Facts, to which Plaintiff failed to offer a response. Defendants' undisputed material facts are set forth in Section III of this Report.

2

a corrections officer; and Tammy Brooks, a nurse, refused to help him for an hour and ten minutes.[3] During that time, these Defendants saw him lying on the ground and ordered him to stand. (Id.) Eventually, medical staff moved Plaintiff to a bed, and Dr. Gunderson examined his injuries. Then, emergency medical technicians ("EMTs") transferred Plaintiff to Southeast Georgia Health System. (Id.) Plaintiff's injuries were too severe to be treated at Southeast Georgia Health System, and he was transferred to Memorial Hospital in Savannah, Georgia. Plaintiff had surgery at Memorial Hospital and remained at that hospital until February 15, 2016, when he was returned to the Glynn County Detention Center.

On March 2, 2016, at 6:45 p.m., Plaintiff told Officer Terrell that he was in severe pain. (Id.) On that date, Plaintiff attempted to get his drink off of the table. He slipped and hurt his hip, back, neck, and left elbow. (Id.) A medical emergency was called, and Lieutenant Wooten, Sergeant Rozier, Officer Terrell, and Nurse Johnson saw Plaintiff lying on the floor. (Id. at pp. 4–5.) Nurse Johnson examined Plaintiff and then called emergency medical services for Plaintiff. (Id. at p. 5.) EMTs again transported Plaintiff to Southeast Georgia Health System. Physicians and nurses examined Plaintiff at the hospital and discharged him with a left arm sling and prescription pain medication. (Id.) Plaintiff was then taken back to the Detention Center.

Two days later, on March 4, 2016, Plaintiff went to his preliminary hearing. (Id.) Before Plaintiff left for the hearing, Defendant Hall, Ms. Franks, Major Heath, and Sergeant Neaves claimed that Dr. Gunderson said that Plaintiff did not need an arm sling. (Id.) Then, Defendant Hall, Ms. Franks, Major Heath, and Sergeant Neaves used physical force to remove the arm sling from Plaintiff's arm. These actions caused Plaintiff more physical pain. (Id.)

---

[3] Although Dr. Gunderson is a named Defendant and also has moved for summary judgment, the Court addresses that Motion by separate Order and Report and Recommendation. Thus, the Court refers to him in this Order and Report and Recommendation as "Dr. Gunderson" rather than as "Defendant Gunderson".

I conducted a frivolity review of Plaintiff's Complaint and directed service of Plaintiff's Complaint upon Defendants based on Plaintiff's allegations that Defendants were deliberately indifferent to Plaintiff's medical needs. (Doc. 16, pp. 7–9, 10.) I recommended the Court dismiss Plaintiff's claims against Neal Jump and Judy Lowe and his monetary damages claims against Defendants in their official capacities. (Doc. 15, pp. 5–7.) The Court adopted this recommendation and dismissed Plaintiff's claims against Jump and Lowe, as well as his monetary damages claims against Defendants in their official capacities. (Doc. 17.)

Defendants have now moved for summary judgment.

## STANDARD OF REVIEW

Summary judgment "shall" be granted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute about a material fact is genuine and summary judgment is inappropriate if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. However, there must exist a conflict in substantial evidence to pose a jury question." Hall v. Sunjoy Indus. Grp., Inc., 764 F. Supp. 2d 1297, 1301 (M.D. Fla. 2011) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986), and (Verbraeken v. Westinghouse Elec. Corp., 881 F.2d 1041, 1045 (11th Cir. 1989)).

The moving party bears the burden of establishing that there is no genuine dispute as to any material fact and that he is entitled to judgment as a matter of law. See Williamson Oil Co., Inc. v. Philip Morris USA, 346 F.3d 1287, 1298 (11th Cir. 2003). Specifically, the moving party must identify the portions of the record which establish that there are no "genuine dispute[s] as to any material fact and the movant is entitled to judgment as a matter of law." Moton v. Cowart, 631 F.3d 1337, 1341 (11th Cir. 2011). When the nonmoving party would have the burden of

proof at trial, the moving party may discharge his burden by showing that the record lacks evidence to support the nonmoving party's case or that the nonmoving party would be unable to prove his case at trial. See id. (citing Celotex v. Catrett, 477 U.S. 317, 322–23 (1986)). In determining whether a summary judgment motion should be granted, a court must view the record and all reasonable inferences that can be drawn from the record in a light most favorable to the nonmoving party. Peek-A-Boo Lounge of Bradenton, Inc. v. Manatee Cty., 630 F.3d 1346, 1353 (11th Cir. 2011).

## DISCUSSION

In their Motion for Summary Judgment, Defendants assert Plaintiff's deliberate indifference claims fail and that they are entitled to qualified immunity. In addition, Defendants assert that Plaintiff's excessive use of force claim is without merit.[4] (Doc. 57-1.) In moving for summary judgment, Defendants rely on their Statement of Material Facts, a copy of the transcript from Plaintiff's deposition, declarations sworn under penalty of perjury, and Plaintiff's medical records. As set forth below, I agree that Plaintiff fails to establish a genuine dispute as to his deliberate indifference claims. Therefore, the Court should **GRANT** Defendants' Motion.

Plaintiff did file two (2) "Declarations" and a Motion for Production of Documents after Defendants filed their Motion for Summary Judgment, as well as a letter docketed as a Motion to Appoint Counsel. (Docs. 63, 64, 65, 66.) Prior to turning to Defendants' Motion for Summary Judgment, the Court addresses Plaintiff's filings.

---

[4] This Court did not recognize a cognizable excessive use of force claim during frivolity review and did not serve Plaintiff's Complaint based on any such claim. Additionally, Plaintiff did not object to that decision or otherwise move to assert an excessive force claim. Thus, the Court will not address Defendants' arguments as to an excessive force claim. Nevertheless, if the Court had sanctioned such a claim, it should be subject to dismissal for the reasons Defendants advance in their Motion, (doc. 57-1, pp. 14–15), and because Plaintiff failed to respond or otherwise create a genuine issue of material fact.

5

## I. Plaintiff's Declarations and Motion for Production of Documents

Plaintiff contends he does not have access to discovery materials, such as copies of documents, deposition transcripts, and his medical records. (Doc. 63, p. 1.) Plaintiff maintains he has been unable to receive documentary evidence to support his claims due to his incarceration and the Health Information Portability and Accountability Act ("HIPAA"), as these are obstacles "hindering" him from presenting his case. (Id. at p. 2; See also Doc. 64, p. 1.)

Plaintiff has also filed a Motion to Compel[5] Defendants to produce his complete medical records, his grievances and any statements arising from the February 11, 2016, incident, and copies of generally applicable rules and regulations for jail detainees and prisoners. (Doc. 65.)

The Court **DENIES** Plaintiff's Motion. The Court advised Plaintiff at the onset of its review of his Complaint that he "has the responsibility" to pursue his case. (Doc. 16, p. 12.) For instance, the Court advised Plaintiff he must initiate discovery if he wished "to obtain facts and information about the case from Defendants[]" and that Plaintiff should "promptly" begin discovery within 140 days of the filing of the last answer. (Id.) The Court also advised Plaintiff that interrogatories "are a practical method of discovery for incarcerated persons." (Id. (citing Fed. R. Civ. P. 33).) Additionally, the Court informed Plaintiff that, should he wish to file a motion to compel pursuant to Federal Rule of Civil Procedure 37, he should first contact

---

[5] Plaintiff's Motion was docketed as a Motion for Production of Documents. (Doc. 65.) However, for purposes of discussion, the Court has re-characterized this Motion as a Motion to Compel. "Federal courts sometimes will ignore the legal label that a *pro se* litigant attaches to a motion and recharacterize the motion in order to place it within a different legal category." Retic v. United States, 215 F. App'x 962, 964 (11th Cir. 2007) (quoting Castro v. United States, 540 U.S. 375, 381 (2003)). This Court may "recharacterize a *pro se* litigant's motion to create a better correspondence between the substance of the motion and its underlying legal basis." Rameses v. United States District Court, 523 F. App'x 691, 694 (11th Cir. 2013). Federal courts "may do so in order to avoid an unnecessary dismissal, to avoid inappropriately stringent application of formal labeling requirements, or to create a better correspondence between the substance of the motion and its underlying legal basis." Id. (quoting Castro, 540 U.S. at 381–82). Even if this Motion is one for the production of documents, Plaintiff should have made such a request of Defendants well before October 16, 2017, and need not have filed this pleading with the Court.

Defendants' attorney to resolve the issue. (Id.) Moreover, Plaintiff was informed he should file a certification with any motion to compel that he contacted Defendants' counsel in "a good faith effort to resolve any dispute about discovery." (Id. at pp. 12–13 (citing Fed. R. Civ. P. 26 (c) & 37(a)(2)(A); Local R. 26.7).) Plaintiff failed to do so.

As to the filing of any motion for summary judgment, the Court forewarned Plaintiff that his failure to respond would indicate no opposition, he has the burden of establishing a genuine dispute as to any fact material to his claims, and he should file opposing affidavits. (Id. at pp. 14–15.) While the Court notes Plaintiff's assertion that he could not obtain copies of documents he claims he needs to respond to Defendants' Motion for Summary Judgment, the Court cannot sustain Plaintiff's assertion. Plaintiff has notified the Court on at least two previous occasions he has attempted to obtain copies of his medical records and claims he was denied said copies due to HIPAA. (Docs. 37, 38.)

HIPAA provides penalties for "[a] person who knowingly and in violation of [HIPAA]– (1) uses . . . a unique health identifier; (2) obtains individually identifiable health information relating to an individual; or (3) discloses individually identifiable health information to another person." 42 U.S.C. § 1320d-6. As the HIPAA regulations clarify, the general rule of HIPAA is that "[a] covered entity . . . may not use or disclose protected health information, except as permitted or required by [these regulations]." Murphy v. Dulay, 768 F.3d 1360, 1368–69 (11th Cir. 2014) (quoting 45 C.F.R. § 164.502(a).)

The HIPAA regulations, however, provide numerous exceptions to the general rule, which permit a covered entity to use or disclose protected health information, if certain requirements are met. Id. at 1369 & n.6. One of these exceptions provides for the disclosure of medical information, without the written authorization of the individual, "in the course of any

judicial or administrative proceeding." Id. at 1369 (quoting 45 C.F.R. § 164.512(e)(1).) A covered entity may make a disclosure under this exception only in response to "an order of a court or administrative tribunal" or in response to "a subpoena, discovery request, or other lawful process . . . when certain conditions are met." Id. (internal quotation marks omitted) (quoting 45 C.F.R. §§ 164.512(e)(1)(i)–(ii)).

Notably, HIPAA protects against disclosure to other people of an individual's medical records, not to the individual himself. While Plaintiff's incarceration may indeed present problems obtaining actual copies of his medical records from prison staff or Defendants, such an obstacle does not necessarily implicate HIPAA or a private medical provider's response to Plaintiff's requests. See Santiago v. Southern Health Partners, 2016 WL 4435229, at *3 (M.D. N.C. Aug. 19, 2016) (A correctional institution or a covered health care provider acting under the direction of a covered entity correctional institution can deny an inmate's request for copies of medical records if such disclosure "would jeopardize the health, safety, security, custody, or rehabilitation of the individual or of other inmates, or the safety of" employees at the correctional institution. However, this is not a "blanket ban on dissemination of health information to inmates[.]") (quoting 45 C.F.R. § 164.524(a)(2)(ii)). Even if HIPAA did create an obstacle for Plaintiff in obtaining copies of his medical records, he could have requested the same through discovery or at least have requested to have the opportunity to view his medical records. Moreover, Plaintiff fails to sufficiently explain how his supposed lack of access to his medical records has hindered his prosecution of this case.

Additionally, Plaintiff could have at least provided his own affidavit in opposition to those filed by Defendants in support of their Motion for Summary Judgment. He did not do so or otherwise attempt to create a genuine dispute as to any fact material to his deliberate

8

indifference claims. Plaintiff had his medical records available to him. Defendants' counsel and counsel for Dr. Gunderson mailed their motions and supporting materials to Plaintiff, which included his medical records. (Doc. 57, p. 3; Doc. 57-1, p. 18; Doc. 57-2, p. 8; Doc. 59, p. 3; Doc. 60, p. 2; Doc. 60-2, p. 165.) During his deposition, Plaintiff testified that several officers were witnesses to the events giving rise to his lawsuit and that his mother and Crystal Ray with the Southern Center for Human Rights could verify his claims, (doc. 59-1, pp. 21, 49, 52), yet he failed to submit anything from any of these people in support of his claims. The Court will not excuse Plaintiff's failure to pursue his own case.

For these reasons, the Court **DENIES** Plaintiff's Motion to Compel.

## II. Plaintiff's Motion to Appoint Counsel

Plaintiff sent a letter to the Court, which was docketed as a Motion to Appoint Counsel. (Doc. 66.) To the extent this letter can be considered a Motion to Appoint Counsel, the Court **DENIES** Plaintiff's Motion.

In this civil case, Plaintiff has no constitutional right to the appointment of counsel. Wright v. Langford, 562 F. App'x 769, 777 (11th Cir. 2014) (citing Bass v. Perrin, 170 F.3d 1312, 1320 (11th Cir. 1999)). "Although a court may, pursuant to 28 U.S.C. § 1915(e)(1), appoint counsel for an indigent plaintiff, it has broad discretion in making this decision, and should appoint counsel only in exceptional circumstances." Id. (citing Bass, 170 F.3d at 1320). Appointment of counsel in a civil case is a "privilege that is justified only by exceptional circumstances, such as where the facts and legal issues are so novel or complex as to require the assistance of a trained practitioner." Fowler v. Jones, 899 F.2d 1088, 1096 (11th Cir. 1990) (citing Poole v. Lambert, 819 F.2d 1025, 1028 (11th Cir. 1987), and Wahl v. McIver, 773 F.2d 1169, 1174 (11th Cir. 1985)). The Eleventh Circuit Court of Appeals has explained that "the

key" to assessing whether counsel should be appointed "is whether the *pro se* litigant needs help in presenting the essential merits of his or her position to the court. Where the facts and issues are simple, he or she usually will not need such help." McDaniels v. Lee, 405 F. App'x 456, 457 (11th Cir. 2010) (quoting Kilgo v. Ricks, 983 F.2d 189, 193 (11th Cir. 1993)).

The Court has reviewed the record and pleadings in this case and finds no "exceptional circumstances" warranting the appointment of counsel. While the Court understands that Plaintiff is incarcerated, this Court has repeatedly found that "prisoners do not receive special consideration notwithstanding the challenges of litigating a case while incarcerated." Hampton v. Peeples, No. CV 614-104, 2015 WL 4112435, at *2 (S.D. Ga. July 7, 2015). "Indeed, the Eleventh Circuit has consistently upheld district courts' decisions to refuse appointment of counsel in 42 U.S.C. § 1983 actions similar to this case for want of exceptional circumstances." Id. (citing Smith v. Warden, Hardee Corr. Inst., 597 F. App'x 1027, 1030 (11th Cir. 2015); Wright, 562 F. App'x at 777; Faulkner v. Monroe Cty. Sheriff's Dep't, 523 F. App'x 696, 702 (11th Cir. 2013); McDaniels, 405 F. App'x at 457; Sims v. Nguyen, 403 F. App'x 410, 414 (11th Cir. 2010); Fowler, 899 F.2d at 1091, 1096; and Wahl, 773 F.2d at 1174). This case is not so complex legally or factually to prevent Plaintiff from presenting "the essential merits of his position" to the Court.

For these reasons, the Court **DENIES** Plaintiff's Motion.

## III. Plaintiff's Deliberate Indifference Claims

As a pre-trial detainee at the Glynn County Detention Center, Plaintiff's deliberate indifference claim is evaluated under the Fourteenth Amendment.[6] However, the Eleventh

---

[6] Defendants note Plaintiff was both a convicted prisoner due to violations of his probation and a pre-trial detainee due to new charges being levied against him at the time giving rise to Plaintiff's Complaint. (Doc. 57-1, pp. 8–9 (citing Williams v. Limestone Cty., 198 F. App'x 893, 896 n.3 (11th Cir. 2006).) Any such distinction is of no moment, as discussed in footnote 7 of this Report, *infra*.

10

Circuit Court of Appeals has "historically treated convicted prisoners' Eighth Amendment claims and pretrial detainees' Fourteenth Amendment claims identically." White v. Cochran, No. 16-17490-G, 2017 WL 6492004, at * 2 (11th Cir. Nov. 27, 2017).[7] Thus, a deliberate indifference to medical needs claim under the Fourteenth Amendment mirrors analysis of the Eighth Amendment's proscription against cruel and unusual punishment. See Farmer v. Brennan, 511 U.S. 825, 832 (1994). The standard for cruel and unusual punishment in the medical care context, embodied in the principles expressed in Estelle v. Gamble, 429 U.S. 97, 104 (1976), is whether a prison official exhibits a deliberate indifference to the serious medical needs of an inmate. Farmer, 511 U.S. at 828. However, "not every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991) (quoting Estelle, 429 U.S. at 105). Rather, "an inmate must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Hill v. DeKalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1186 (11th Cir. 1994).

Thus, in order to prove a deliberate indifference to medical care claim, similar to any other deliberate indifference claim, a prisoner must: (1) "satisfy the objective component by showing that [he] had a serious medical need"; (2) "satisfy the subjective component by showing that the prison official acted with deliberate indifference to [his] serious medical need"; and (3) "show that the injury was caused by the defendant's wrongful conduct." Goebert v. Lee Cty.,

---

[7] In Kingsley v. Hendrickson, the United States Supreme Court found the "language of the [Eighth Amendment's Cruel and Unusual Punishment Clause and the Fourteenth Amendment's Due Process Clause] differs, and the nature of the claims often differs." ___ U.S. ___, 135 S. Ct. 2466, 2475 (June 22, 2015) (adopting a different test to evaluate pre-trial detainee's excessive force claims than the test used to evaluate convicted prisoners' excessive force claims). However, the Eleventh Circuit recently determined that "Kingsley is not squarely on point with and does not actually abrogate or directly conflict with precedent outside of the context of an excessive[]force claim." White, 2017 WL 6492004, at *2 n.1 (citing Dang ex rel. Dang v. Sheriff, Seminole Cty., 871 F.3d 1272, 1279 n.2 (11th Cir. 2017) (internal citation and punctuation omitted)).

510 F.3d 1312, 1326 (11th Cir. 2007). As to the first component, a medical need is serious if it "'has been diagnosed by a physician as mandating treatment or [is] one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" Id. (quoting Hill, 40 F.3d at 1187). Under the second, subjective component, the Eleventh Circuit has consistently required that "a defendant know of and disregard an excessive risk to an inmate's health and safety." Haney v. City of Cumming, 69 F.3d 1098, 1102 (11th Cir. 1995). Thus, the subjective component requires an inmate to prove: "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence." Melton v. Abston, 841 F.3d 1207, 1223 (11th Cir. 2016).[8]

"Conduct that is more than mere negligence includes: (1) grossly inadequate care; (2) a decision to take an easier but less efficacious course of treatment; and (3) medical care that is so cursory as to amount to no treatment at all." Bingham v. Thomas, 654 F.3d 1171, 1176 (11th Cir. 2011). Additionally, a defendant who "delays necessary treatment for non-medical reasons" or "knowingly interfere[s] with a physician's prescribed course of treatment" may exhibit deliberate indifference. Id. (citations omitted).

When a claim turns on the quality of treatment provided, however, "'a simple difference in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment' does not support a claim of deliberate indifference." Melton, 841 F.3d at 1224 (quoting Harris, 941 F.2d at 1505). In other words, "medical malpractice does not become

---

[8] Eleventh Circuit case law on whether a claim of deliberate indifference requires "more than *gross* negligence" or "more than *mere* negligence" is contradictory. Compare Goebert v. Lee Cty., 510 F.3d 1312, 1327 (11th Cir. 2007), with Bingham v. Thomas, 654 F.3d 1171, 1176 (11th Cir. 2011). In Melton v. Abston, 841 F.3d 1207, 1223 (11th Cir. 2016), the Eleventh Circuit found "more than mere negligence" to be the appropriate standard. 841 F.3d at 1223 n.2. Even so, at least two unpublished Eleventh Circuit cases post-Melton have continued to use the "gross negligence" standard. See, e.g., Woodyard v. Ala. Dep't of Corr., 2017 WL 2829376 (11th Cir. June 30, 2017); Sifford v. Ford, 2017 WL 2874517 (11th Cir. July 6, 2017). However, because the Eleventh Circuit explicitly addressed this issue in Melton, this Court will apply the "more than mere negligence" standard.

a constitutional violation merely because the victim is a prisoner." Estelle v. Gamble, 429 U.S. 97, 104 (1976). Furthermore, deliberate indifference is not established when an inmate receives medical care, but "may have desired different modes of treatment." Hamm v. DeKalb Cty., 774 F.2d 1567, 1575 (11th Cir. 1985).

Defendants' unrefuted Statement of Material Facts and supporting materials establish the following facts pertinent to whether Defendants were deliberately indifferent to Plaintiff's medical needs. Plaintiff had been serving time at the Glynn County Detention Center based on robbery charges and was released on January 29, 2016. (Doc. 57-2, p. 1.) Plaintiff led City of Brunswick officers on a high speed chase on February 9, 2016, which resulted in Plaintiff crashing his car and suffering injuries. (Id.) Plaintiff was taken to Memorial Hospital in Savannah, Georgia, for treatment of his injuries and released himself from the hospital against medical advice. (Doc. 57-3, p. 2.) However, Brunswick Police Department had a hold on Plaintiff, and he should have been permitted to leave the hospital only in police custody. (Doc. 57-2, p. 2.) Brunswick Police officers were able to arrest Plaintiff on February 10, 2016, at which time he was taken to the hospital in Brunswick, Georgia, and was medically cleared to be taken to the Glynn County Detention Center. (Id.; Doc. 57-3, p. 8.)

On the morning of February 11, 2016, Plaintiff slipped in his own urine and fell to the floor. Defendant Hall, a medical assistant, arrived several moments later and saw Plaintiff lying on the floor of his cell. (Doc. 57-2, p. 2.) Defendant Hall called Dr. Gunderson, who was home at the time, and he came to the Detention Center and then to Plaintiff's cell approximately forty-five (45) minutes later. (Doc. 57-4, pp. 1, 2.) Dr. Gunderson directed that Plaintiff not be moved until he could examine Plaintiff because Dr. Gunderson did not want to exacerbate Plaintiff's injury. (Id. at p. 2.) Defendants Brooks and Juran had also come to Plaintiff's cell. (Doc. 59-1,

p. 28.) Plaintiff testified that he told Defendants and Dr. Gunderson that he felt like he could not move. (Id. at p. 30.) Dr. Gunderson decided Plaintiff needed to be transferred to the emergency room upon examination and instructed staff to call for an ambulance. (Doc. 57-2, p. 3.) Plaintiff remained on the floor, and officers and medical staff checked on him every two to three minutes until EMTs arrived. (Id.) Plaintiff was loaded onto a stretcher and was taken to the hospital in Brunswick. Plaintiff estimates he was on the floor for a little more than an hour from the time he fell until he was taken to the hospital. (Doc. 59-1, p. 28.) Plaintiff was then transferred to Memorial Hospital in Savannah and had hip surgery. Plaintiff was discharged from Memorial and returned to the Glynn County Detention Center on February 15, 2016. (Doc. 57-2, p. 3.)

Upon his return, Defendant Juran urged Plaintiff to use a wheelchair, but Plaintiff knew he could not bear any weight on his hip and ignored Defendant Juran's comments. (Id. at p. 4; Doc. 59-1, p. 50.) Plaintiff testified that jail staff resented having to accommodate him, but, nevertheless, they transported him by stretcher for his remaining time at the Detention Center. (Doc. 57-2, p. 4.)

A corrections officer left Plaintiff's meal tray in Plaintiff's cell on March 2, 2016, and he slipped and fell when he reached for it, injuring his shoulder. Plaintiff went to the hospital and returned with his arm in a sling.[9] On March 4, 2016, Plaintiff was to appear in court. (Id.) Dr. Gunderson had consulted with the doctor who treated Plaintiff's shoulder injury, and that doctor advised it was important that Plaintiff not have his arm in the sling so that he could begin doing range-of-motion exercises. (Doc. 57-4, p. 2.) Dr. Gunderson gave staff orders to remove Plaintiff's arm from the sling. (Id.) Defendant Hall entered Plaintiff's cell and told Plaintiff she

---

[9] During his deposition, Plaintiff clarified that he does not take issue with the events of March 2, 2016. (Doc. 59-1, p. 37.) The Court includes these events to provide background for the events of March 4, 2016.

needed to get the sling. Two corrections officers held Plaintiff down while Defendant Hall and a non-party nurse roughly removed the sling from his arm.[10] (Doc. 57-2, p. 5.)

The undisputed evidence before the Court shows that Defendant Hall, a medical assistant, quickly notified Dr. Gunderson of Plaintiff's fall on February 11, 2016, and reasonably followed Dr. Gunderson's orders thereafter. Dr. Gunderson directed that Plaintiff not be moved until Dr. Gunderson could examine him. Additionally, Defendant Hall was one of the staff who checked on Plaintiff every few minutes while he was awaiting the arrival of the EMTs. Moreover, Defendant Hall followed Dr. Gunderson's orders that Plaintiff was not to have his arm in a sling on March 4, 2016, after Dr. Gunderson consulted with the doctor who had treated Plaintiff's shoulder injury. Thus, a reasonable jury could not conclude Defendant Hall was deliberately indifferent to Plaintiff's serious medical needs by deferring to Dr. Gunderson's directives. See Dunn v. Hart, Civil Action No.: 5:13-cv-131, 2016 WL 5661058, at *7 (S.D. Ga. Sept. 29, 2016), *report and recommendation adopted sub nom.*, Dunn v. Warden, Ware State Prison, 2017 WL 5047902 (S.D. Ga. Sept. 25, 2017) (quoting Bauer v. Kramer, 424 F. App'x 917, 919 (11th Cir. 2011) ("[A] nurse is not deliberately indifferent when she reasonably follows a doctor's orders by administering prescribed medication to an inmate."), and Billue v. Gualtieri, No. 8:13-CV-546-T-30TGW, 2013 WL 1405945, at *4 (M.D. Fla. Apr. 8, 2013) ("A nurse is not deliberately indifferent when he/she reasonably follows a doctor's orders.")).

Likewise, Defendant Brooks was following Dr. Gunderson's orders on February 11, 2016, that Plaintiff not be moved from the floor of his cell until the EMTs arrived at the Detention Center. Although Defendant Brooks is a nurse, there is nothing before the Court which creates a genuine dispute that following Dr. Gunderson's directive to not move Plaintiff

---

[10] Defendants note Plaintiff's allegations that Defendants Hall and Brooks lied to have Plaintiff placed on suicide watch. Plaintiff did not include any such allegations in his Complaint, (docs. 1, 42), nor did the Court sanction service of Plaintiff's Complaint based on any such allegations, (docs. 16, 41).

was unreasonable or otherwise exhibited deliberate indifference to Plaintiff's serious medical needs. In fact, Plaintiff told officials and medical staff he did not feel like he could move, and Dr. Gunderson was present at the Detention Center during the time Plaintiff remained on the floor and awaited EMTs to take him to the hospital. As with Defendant Hall, a reasonable jury could not find Defendant Brooks was deliberately indifferent to Plaintiff's serious medical needs resulting from his fall on February 11, 2016. Id.

Moreover, there is no evidence by which a reasonable jury could find Defendant Juran was deliberately indifferent to Plaintiff's serious medical needs. Defendant Juran simply and reasonably followed the orders of Dr. Gunderson and did not move Plaintiff from the floor on February 11, 2016, while Plaintiff awaited the EMTs' arrival to be taken to the hospital. "A medical treatment claim [will] not lie against non-medical personnel unless they were personally involved in the denial of treatment or deliberately interfered with prison doctors' treatment. Prison officials are entitled to rely on the opinions, judgment and expertise of a prison medical staff to determine a medically necessary and appropriate cause of treatment for an inmate." Baker v. Pavlakovic, No. 4:12-CV-03958-RDP, 2015 WL 4756295, at *7 (N.D. Ala. Aug. 11, 2015) (citing Williams v. Limestone Cty., 198 F. App'x 893, 897 (11th Cir. 2006)). "[It] is widely held that non-medical prison personnel are generally entitled to rely on the expertise of the medical staff and are not required to second-guess the medical staff's judgment regarding an inmate's care." Stallworth v. Graham, No. 4:14-CV-00134-RDP, 2015 WL 4756348, at *5 (N.D. Ala. Aug. 11, 2015) (citing Johnson v. Doughty, 433 F.3d 1001, 1011 (7th Cir. 2006) ("Except in the unusual case where it would be evident to a layperson that a prisoner is receiving inadequate or inappropriate treatment, prison officials may reasonably rely on the judgment of medical professionals[.]"), and Kelly v. Ambroski, 97 F. Supp. 3d 1320, 1343 (N.D. Ala. 2015)

("[I]n the absence of a reason to believe, or actual knowledge, that medical staff is administering inadequate medical care, non-medical prison personnel are not chargeable with the Eighth Amendment scienter requirement of deliberate indifference[.]")); see also Bingham, 654 F.3d at 1176.

Even viewing the allegation that Defendant Juran tried to get Plaintiff to use a wheelchair after his hip surgery in the light most favorable to Plaintiff, there is no evidence Plaintiff followed Defendant Juran's attempt or otherwise was harmed by these comments. What is more, to establish deliberate indifference against Defendant Juran, Plaintiff must create a genuine dispute as to causation, which he simply has not done. Goebert, 510 F.3d at 1326.

Plaintiff has failed to establish a genuine dispute of material fact which reveals that Defendants acted in an objectively unreasonable manner. Consequently, Defendants are entitled to summary judgment in their favor. The Court should **GRANT** this portion of Defendants' Motion and **DISMISS** Plaintiff's claims against Defendants Brooks, Hall, and Juran.[11]

---

[11] Given this recommendation, the Court need not delve deeply into Defendants' qualified immunity arguments. Martinez v. Burns, 459 F. App'x 849, 851 n.2 (11th Cir. 2012) (unnecessary to address defendants' entitlement to qualified immunity when summary judgment properly granted based on plaintiff's failure to sustain his Eighth Amendment deliberate indifference claim). However, even if the Court were to determine there is a genuine dispute of material fact as to whether Defendants were deliberately indifferent to Plaintiff's serious medical needs, Defendants are entitled to qualified immunity. Qualified immunity shields "government officials performing discretionary functions . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); see also Lee v. Ferraro, 284 F.3d 1188, 1193–94 (11th Cir. 2002). To determine "whether the law clearly established the relevant conduct as a constitutional violation at the time [the defendants] engaged in the challenged acts," the defendants must have had "fair warning" that their conduct violated a constitutional right. Jones v. Fransen, 857 F.3d 843, 851 (11th Cir. 2017) (citing Coffin v. Brandau, 642 F.3d 999, 1013 (11th Cir. 2011) (citations and quotation marks omitted)). In order to demonstrate "fair warning" and defeat qualified immunity, Plaintiff must "point to binding precedent that is materially similar," or show the challenged conduct violated federal law with "obvious clarity" such that "every reasonable government official facing the circumstances would know that the official's conduct" was unlawful. Id. at 852; Gaines v. Wardynski, 871 F.3d 1203, 1209 (11th Cir. 2017) (binding precedent comes from "the United States Supreme Court, the Eleventh Circuit, or the highest court in the relevant state") (citation and alteration omitted). The facts presented at summary judgment establish this is not an "obvious clarity" case and further show that Defendants had no "fair warning" that their challenged conduct was

## IV. Leave to Appeal *in Forma Pauperis*

The Court should also deny Plaintiff leave to appeal *in forma pauperis*. Though Plaintiff has, of course, not yet filed a notice of appeal, it is proper to address these issues in the Court's order of dismissal. See Fed. R. App. P. 24(a)(3) (trial court may certify that appeal of party proceeding *in forma pauperis* is not taken in good faith "before or after the notice of appeal is filed").

An appeal cannot be taken *in forma pauperis* if the trial court certifies that the appeal is not taken in good faith. 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3). Good faith in this context must be judged by an objective standard. Busch v. Cty. of Volusia, 189 F.R.D. 687, 691 (M.D. Fla. 1999). A party does not proceed in good faith when he seeks to advance a frivolous claim or argument. See Coppedge v. United States, 369 U.S. 438, 445 (1962). A claim or argument is frivolous when it appears the factual allegations are clearly baseless or the legal theories are indisputably meritless. Neitzke v. Williams, 490 U.S. 319, 327 (1989); Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993). Stated another way, an *in forma pauperis* action is frivolous, and thus, not brought in good faith, if it is "without arguable merit either in law or fact." Napier v. Preslicka, 314 F.3d 528, 531 (11th Cir. 2002); see also Brown v. United States, Nos. 407CV085, 403CR001, 2009 WL 307872, at *1–2 (S.D. Ga. Feb. 9, 2009).

Based on the above analysis of Plaintiff's action and Defendants' unopposed Motion for Summary Judgment, there are no non-frivolous issues to raise on appeal, and an appeal would

---

unlawful. Plaintiff has not pointed to any binding precedent that would have put Defendants on notice that their treatment of Plaintiff violated his Fourteenth Amendment rights. To the contrary, the binding precedent indicates that Defendants did not "violate clearly established" federal law. Plaintiff has not cited, and the Court is not aware, of any binding precedent holding that a prison official violates the Constitution by following a medical professional's orders when rendering treatment to a prisoner or dealing with the prisoner. Moreover, to the extent any Defendant relied upon his or her own medical judgment in treating Plaintiff, the law is clearly established that a difference of opinion as to that judgment does not establish deliberate indifference.

not be taken in good faith. Thus, the Court should **DENY** Plaintiff *in forma pauperis* status on appeal.

## CONCLUSION

Based on the foregoing, I **RECOMMEND** the Court **GRANT** Defendants' unopposed Motion for Summary Judgment and **DISMISS** Plaintiff's claims against Defendants Brooks, Hall, and Juran. I further **RECOMMEND** the Court **DENY** Plaintiff *in forma pauperis* status on appeal. The Court **DENIES** Plaintiff's Motion to Compel and his Motion to Appoint Counsel. (Docs. 65, 66.)

The Court **ORDERS** any party seeking to object to this Report and Recommendation to file specific written objections within fourteen (14) days of the date on which this Report and Recommendation is entered. Any objections asserting that the Magistrate Judge failed to address any contention raised in the Complaint must also be included. Failure to do so will bar any later challenge or review of the factual findings or legal conclusions of the Magistrate Judge. See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140 (1985). A copy of the objections must be served upon all other parties to the action. The filing of objections is not a proper vehicle through which to make new allegations or present additional evidence.

Upon receipt of Objections meeting the specificity requirement set out above, a United States District Judge will make a *de novo* determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge. Objections not meeting the specificity requirement set out above will not be considered by a District Judge. A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final

judgment entered by or at the direction of a District Judge.  The Court **DIRECTS** the Clerk of Court to serve a copy of this Report and Recommendation upon the parties.

**SO ORDERED** and **REPORTED and RECOMMENDED**, this 23rd day of February, 2018.

_____
R. STAN BAKER
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA