**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION**

MICHAEL SHELLY BAKER, JR.,

    Plaintiff,

v.

DR. JEFFREY GUNDERSON; TAMMY BROOKS; TAIWANA HALL; and DONNICE JURAN,

    Defendants.

CIVIL ACTION NO.: 2:16-cv-37

## **ORDER and MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Plaintiff, who is currently housed at Georgia State Prison in Reidsville, Georgia, filed a 42 U.S.C. § 1983 action, contesting certain conditions of his confinement while he was housed at the Glynn County Detention Center in Brunswick, Georgia. (Doc. 1.) On October 3, 2017, Defendant Gunderson ("Gunderson") filed a Motion for Summary Judgment. (Doc. 60.) The Clerk of Court mailed a Notice to Plaintiff advising him that Defendant Gunderson filed a Motion for Summary Judgment and that a response must be filed by October 24, 2017. (Doc. 61.) That Notice further advised Plaintiff that:

> 1. If you do not timely respond to this motion . . . , the consequence may be that the Court will deem the motion unopposed, and the Court may enter judgment against you.
>
> 2. If your opponent's Statement of Material Facts sets forth facts supported by evidence, the Court may assume that you admit all such facts unless you oppose those facts with your own Statement of Material Facts which also sets forth facts supported by evidence.
>
> 3. If a summary judgment motion is properly supported, you may not rest on the allegations in your [Complaint] alone.

(Id.) This Notice was returned to the Clerk of Court as undeliverable to Plaintiff at Baldwin State Prison. (Doc. 62.) The Clerk of Court re-mailed this Notice to Plaintiff at Georgia State Prison on October 5, 2017.

Plaintiff filed no Response to Gunderson's Motion for Summary Judgment[1], and the Court received no indication this Notice or Gunderson's Motion was undeliverable. However, "the district court cannot base the entry of summary judgment on the mere fact that the motion [is] unopposed but, rather, must consider the merits of the motion." United States v. One Piece of Real Property Located at 5800 SW 74th Ave., Miami, Fla., 363 F.3d 1099, 1101 (11th Cir. 2004) (citation omitted). Specifically, the court "must still review the movant's citations to the record to determine if there is, indeed, no genuine issue of material fact." Mann v. Taser Int'l, Inc., 588 F.3d 1291, 1303 (11th Cir. 2009) (citation omitted).

Based on the reasons which follow, I **RECOMMEND** the Court **GRANT** Gunderson's unopposed Motion, **DISMISS** Plaintiff's claims against Defendant Gunderson, and **DENY** Plaintiff *in forma pauperis* status on appeal.

## BACKGROUND[2]

Plaintiff submitted this Complaint regarding the conditions of his confinement while he was housed at the Glynn County Detention Center during February and March of 2016. (Doc. 1-3, pp. 5–6.) Plaintiff alleges that, on February 11, 2016, at 9:45 a.m., while in the Detention Center's medical unit, he fell in his own urine due to his having a fractured left elbow and a

---

[1] Plaintiff filed pleadings after Gunderson filed his Motion for Summary Judgment. (Docs. 63, 64, 65, 66.) However, these documents are not responsive to Gunderson's Motion and have been addressed in an Order of even date.

[2] The recited allegations are taken from Plaintiff's Complaint. However, this is not to say the Court accepts the allegations contained in Plaintiff's Complaint as true. Gunderson offers his version of events through his Motion and Statement of Material Facts, to which Plaintiff failed to offer a response. Gunderson's undisputed material facts are set forth in Section I of this Report.

2

broken left hip socket. (Id. at p. 6.) Plaintiff cried out for help. However, Defendants Taiwana Hall, a medical assistant; Gunderson, the doctor at the Detention Center; Donnice Juran, a corrections officer; and Tammy Brooks, a nurse, refused to help him for an hour and ten minutes. During that time, Defendants saw Plaintiff lying on the ground and ordered him to stand. (Id.) Eventually, medical staff moved Plaintiff to a bed, and Gunderson examined his injuries. Then, emergency medical technicians ("EMTs") transferred Plaintiff to Southeast Georgia Health System. (Id.) Plaintiff's injuries were too severe to be treated at Southeast Georgia Health System, and he was transferred to Memorial Hospital in Savannah, Georgia. Plaintiff had hip surgery at Memorial Hospital, and he remained at that hospital until February 15, 2016, when he was returned to the Glynn County Detention Center.

Plaintiff further alleges that, on March 2, 2016, at 6:45 p.m., he told Officer Terrell that he was in severe pain. (Id.) On that date, Plaintiff attempted to get his drink off of the table. He slipped and hurt his hip, back, neck, and left elbow. (Id.) A medical emergency was called, and Lieutenant Wooten, Sergeant Rozier, Officer Terrell, and Nurse Johnson saw Plaintiff lying on the floor. (Id. at pp. 4–5.) Nurse Johnson examined Plaintiff and then called EMTs for Plaintiff. (Id. at p. 5.) The EMTs again transported Plaintiff to Southeast Georgia Health System. Physicians and nurses examined Plaintiff at the hospital and discharged him with a left arm sling and prescription pain medication. (Id.) Plaintiff was then taken back to the Detention Center.

Two days later, on March 4, 2016, Plaintiff went to his preliminary hearing. (Id.) Before Plaintiff left for the hearing, Defendant Hall, Ms. Franks, Major Heath, and Sergeant Neaves claimed that Gunderson said that Plaintiff did not need an arm sling. (Id.) Then, according to Plaintiff, Defendant Hall, Ms. Franks, Major Heath, and Sergeant Neaves used physical force to

3

remove the arm sling from Plaintiff's arm. These actions caused Plaintiff more physical pain. (Id.)

I conducted a frivolity review of Plaintiff's Complaint and directed service of Plaintiff's Complaint upon Defendants based on Plaintiff's allegations that Defendants were deliberately indifferent to Plaintiff's medical needs. (Doc. 16, pp. 7–9, 10.) I recommended the Court dismiss Plaintiff's claims against Neal Jump and Judy Lowe and his monetary damages claims against Defendants in their official capacities. (Doc. 15, pp. 5–7.) The Court adopted this recommendation and dismissed Plaintiff's claims against Jump and Lowe, as well as his monetary damages claims against Defendants in their official capacities. (Doc. 17.)

Gunderson has now moved for summary judgment.

## STANDARD OF REVIEW

Summary judgment "shall" be granted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute about a material fact is genuine and summary judgment is inappropriate if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. However, there must exist a conflict in substantial evidence to pose a jury question." Hall v. Sunjoy Indus. Grp., Inc., 764 F. Supp. 2d 1297, 1301 (M.D. Fla. 2011) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986), and (Verbraeken v. Westinghouse Elec. Corp., 881 F.2d 1041, 1045 (11th Cir. 1989)).

The moving party bears the burden of establishing that there is no genuine dispute as to any material fact and that he is entitled to judgment as a matter of law. See Williamson Oil Co., Inc. v. Philip Morris USA, 346 F.3d 1287, 1298 (11th Cir. 2003). Specifically, the moving party must identify the portions of the record which establish that there are no "genuine dispute[s] as to

any material fact and the movant is entitled to judgment as a matter of law." Moton v. Cowart, 631 F.3d 1337, 1341 (11th Cir. 2011). When the nonmoving party would have the burden of proof at trial, the moving party may discharge his burden by showing that the record lacks evidence to support the nonmoving party's case or that the nonmoving party would be unable to prove his case at trial. See id. (citing Celotex v. Catrett, 477 U.S. 317, 322–23 (1986)). In determining whether a summary judgment motion should be granted, a court must view the record and all reasonable inferences that can be drawn from the record in a light most favorable to the nonmoving party. Peek-A-Boo Lounge of Bradenton, Inc. v. Manatee Cty., 630 F.3d 1346, 1353 (11th Cir. 2011).

## DISCUSSION

In his Motion for Summary Judgment, Gunderson asserts Plaintiff's deliberate indifference claims fail. (Doc. 60-2.) In moving for summary judgment, Gunderson relies on his Statement of Material Facts, a copy of the transcript from Plaintiff's deposition, several declarations sworn under penalty of perjury, and Plaintiff's medical records.[3] As set forth below, I agree that Plaintiff fails to establish a genuine dispute as to his deliberate indifference claims against Gunderson. Therefore, the Court should **GRANT** Gunderson's Motion.

### I. Plaintiff's Deliberate Indifference Claims

As a pre-trial detainee at the Glynn County Detention Center, Plaintiff's deliberate indifference claim is evaluated under the Fourteenth Amendment.[4] However, the Eleventh

---

[3] Gunderson did not specifically incorporate by reference the materials Defendants Hall, Juran, and Brooks submitted in support of their summary judgment motion. It is clear, however, Gunderson has done so, and the Court cites to those materials as necessary.

[4] Gunderson notes Plaintiff was both a convicted prisoner due to violations of his probation and a pre-trial detainee due to new charges being levied against him at the time giving rise to Plaintiff's Complaint. (Doc. 60-2, p. 10 (citing Williams v. Limestone Cty., 198 F. App'x 893, 896 n.3 (11th Cir. 2006).) Any such distinction is of no moment, as discussed in footnote 5 of this Report, *infra*.

5

Circuit Court of Appeals has "historically treated convicted prisoners' Eighth Amendment claims and pretrial detainees' Fourteenth Amendment claims identically." White v. Cochran, No. 16-17490-G, 2017 WL 6492004, at * 2 (11th Cir. Nov. 27, 2017).[5] Thus, a deliberate indifference to medical needs claim under the Fourteenth Amendment mirrors analysis under the Eighth Amendment's proscription against cruel and unusual punishment. See Farmer v. Brennan, 511 U.S. 825, 832 (1994). The standard for cruel and unusual punishment in the medical care context, embodied in the principles expressed in Estelle v. Gamble, 429 U.S. 97, 104 (1976), is whether a prison official exhibits a deliberate indifference to the serious medical needs of an inmate. Farmer, 511 U.S. at 828. However, "not every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991) (quoting Estelle, 429 U.S. at 105). Rather, "an inmate must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Hill v. DeKalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1186 (11th Cir. 1994).

Thus, in order to prove a deliberate indifference to medical care claim, similar to any other deliberate indifference claim, a prisoner must: (1) "satisfy the objective component by showing that [he] had a serious medical need"; (2) "satisfy the subjective component by showing that the prison official acted with deliberate indifference to [his] serious medical need"; and (3) "show that the injury was caused by the defendant's wrongful conduct." Goebert v. Lee Cty.,

---

[5] In Kingsley v. Hendrickson, the United States Supreme Court found the "language of the [Eighth Amendment's Cruel and Unusual Punishment Clause and the Fourteenth Amendment's Due Process Clause] differs, and the nature of the claims often differs." ___ U.S. ___, 135 S. Ct. 2466, 2475 (June 22, 2015) (adopting a different test to evaluate pre-trial detainee's excessive force claims than the test used to evaluate convicted prisoners' excessive force claims). However, the Eleventh Circuit recently determined that "Kingsley is not squarely on point with and does not actually abrogate or directly conflict with precedent outside of the context of an excessive[]force claim." White, 2017 WL 6492004, at *2 n.1 (citing Dang ex rel. Dang v. Sheriff, Seminole Cty., 871 F.3d 1272, 1279 n.2 (11th Cir. 2017) (internal citation and punctuation omitted)).

510 F.3d 1312, 1326 (11th Cir. 2007). As to the first component, a medical need is serious if it "'has been diagnosed by a physician as mandating treatment or [is] one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" Id. (quoting Hill, 40 F.3d at 1187). Under the second, subjective component, the Eleventh Circuit has consistently required that "a defendant know of and disregard an excessive risk to an inmate's health and safety." Haney v. City of Cumming, 69 F.3d 1098, 1102 (11th Cir. 1995). Thus, the subjective component requires an inmate to prove: "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence." Melton v. Abston, 841 F.3d 1207, 1223 (11th Cir. 2016).[6]

"Conduct that is more than mere negligence includes: (1) grossly inadequate care; (2) a decision to take an easier but less efficacious course of treatment; and (3) medical care that is so cursory as to amount to no treatment at all." Bingham v. Thomas, 654 F.3d 1171, 1176 (11th Cir. 2011). Additionally, a defendant who "delays necessary treatment for non-medical reasons" or "knowingly interfere[s] with a physician's prescribed course of treatment" may exhibit deliberate indifference. Id. (citations omitted).

In instances where a deliberate indifference claim turns on a delay in treatment rather than the type of medical care received, the Court considers "the reason for the delay and the nature of the medical need." Farrow v. West, 320 F.3d 1235, 1246 (11th Cir. 2003) (citing McElligott, 182 F.3d at 1255). When a claim turns on the quality of treatment provided,

---

[6] Eleventh Circuit case law on whether a claim of deliberate indifference requires "more than *gross* negligence" or "more than *mere* negligence" is contradictory. Compare Goebert v. Lee Cty., 510 F.3d 1312, 1327 (11th Cir. 2007), with Bingham v. Thomas, 654 F.3d 1171, 1176 (11th Cir. 2011). In Melton v. Abston, 841 F.3d 1207, 1223 (11th Cir. 2016), the Eleventh Circuit found "more than mere negligence" to be the appropriate standard. 841 F.3d at 1223 n.2. Even so, at least two unpublished Eleventh Circuit cases post-Melton have continued to use the "gross negligence" standard. See, e.g., Woodyard v. Ala. Dep't of Corr., 2017 WL 2829376 (11th Cir. June 30, 2017); Sifford v. Ford, 2017 WL 2874517 (11th Cir. July 6, 2017). However, because the Eleventh Circuit explicitly addressed this issue in Melton, this Court will apply the "more than mere negligence" standard.

7

however, "'a simple difference in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment' does not support a claim of deliberate indifference." Melton, 841 F.3d at 1224 (quoting Harris, 941 F.2d at 1505). In other words, "medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle v. Gamble, 429 U.S. 97, 104 (1976). Furthermore, deliberate indifference is not established when an inmate receives medical care, but "may have desired different modes of treatment." Hamm v. DeKalb Cty., 774 F.2d 1567, 1575 (11th Cir. 1985).

Gunderson's unrefuted Statement of Material Facts and supporting materials establish the following facts pertinent to whether he was deliberately indifferent to Plaintiff's medical needs on February 11 and March 4, 2016. Plaintiff had been serving time at the Glynn County Detention Center based on robbery charges and was released on January 29, 2016. (Doc. 60-2, p. 3.) Plaintiff led City of Brunswick officers on a high speed chase on February 9, 2016, which resulted in Plaintiff crashing his car. (Id.) Plaintiff was taken to Memorial Hospital in Savannah, Georgia, for his injuries and released himself from the hospital against medical advice. (Id. at p. 25.) However, Brunswick Police Department had a hold on Plaintiff, and he should have been permitted to leave the hospital only in police custody. (Id. at p. 3.) Brunswick Police officers were able to arrest Plaintiff on February 10, 2016, at which time he was taken to the hospital in Brunswick, Georgia, and was medically cleared to be taken to the Glynn County Detention Center. (Id. at pp. 3–4, 31.)

On the morning of February 11, 2016, Plaintiff slipped in his own urine and fell to the floor. Defendant Hall, a medical assistant, arrived several moments later and saw Plaintiff lying on the floor of his cell. (Id. at p. 4.) Defendant Hall called Gunderson, who was home at the time, and he came to the Detention Center and Plaintiff's cell approximately forty-five (45)

minutes later. (Id. & at n.1.) Gunderson directed that Plaintiff not be moved until he could examine Plaintiff because Gunderson did not want to exacerbate Plaintiff's injury. (Id. at p. 59.) Plaintiff testified he told Gunderson that he felt like he could not move. (Id. at p. 30.) Gunderson decided Plaintiff needed to be transferred to the emergency room upon examination and instructed staff to call for an ambulance. (Doc. 60-2, pp. 4–5, 70–71.) Plaintiff remained on the floor, and officers and medical staff checked on him every two to three minutes until the EMTs arrived. (Id. at p. 5.) Plaintiff was loaded onto a stretcher and was taken to the hospital in Brunswick. Plaintiff estimates he was on the floor for a little more than an hour from the time he fell until he was taken to the hospital. (Doc. 59-1, p. 28; Doc. 60-2, p. 5.) Plaintiff was then transferred to Memorial Hospital in Savannah and had hip surgery. Plaintiff was discharged from Memorial and returned to the Glynn County Detention Center on February 15, 2016. (Doc. 60-2, p. 5.)

A corrections officer left Plaintiff's meal tray in Plaintiff's cell on March 2, 2016, and he slipped and fell when he reached for it, injuring his shoulder.[7] Plaintiff went to the hospital and returned with his arm in a sling.[8] (Id. at pp. 78, 86.) On March 4, 2016, Plaintiff was to appear in court. (Id. at p. 6.) Gunderson had consulted with the doctor who treated Plaintiff's shoulder injury, and that doctor advised it was important that Plaintiff not have his arm in the sling so that he could begin doing range-of-motion exercises. (Id. at pp. 59, 68, 99.) Gunderson gave staff orders to remove Plaintiff's arm from the sling. (Id.) Defendant Hall entered Plaintiff's cell and

---

[7] Based on Plaintiff's medical records, it appears he injured his elbow on February 24, 2016, and it was from this incident his arm was in a sling. (See, e.g., Doc. 60-2, pp. 97–104.) Any discrepancies between the dates and related injuries do not appear relevant to the present Motion or Plaintiff's contentions.

[8] During his deposition, Plaintiff clarified that he does not take issue with the events of March 2, 2016. (Doc. 59-1, p. 37.) The Court includes these events to provide background for the events of March 4, 2016.

9

told Plaintiff she needed to get the sling. Two corrections officers held Plaintiff down while Defendant Hall and a non-party nurse roughly removed the sling from his arm.[9] (Id. at p. 6.)

The undisputed evidence before the Court reveals that Gunderson was aware of Plaintiff's serious medical needs and responded to those needs arising on February 11 and March 4, 2016. Specifically, upon Gunderson's arrival at the Detention Center on February 11, 2016, after he was notified Plaintiff had fallen, Gunderson directed staff to call an ambulance for Plaintiff so that he could be taken to the hospital. Gunderson also directed staff not to move Plaintiff while he was awaiting the ambulance. Additionally, from the time Gunderson was able to examine Plaintiff to the arrival of the ambulance, approximately thirty (30) minutes elapsed. What is more, officers and medical staff checked on Plaintiff every few minutes until the EMTs arrived. (Doc. 59-1, p. 32.) At most, Plaintiff complains that Gunderson did not treat his serious medical needs in a manner of Plaintiff's choosing. However, a difference of opinion as to a course of treatment does not amount to an Eighth or Fourteenth Amendment violation. Jones v. Fogam, No. CV413-131, 2014 WL 545404, at *2 (S.D. Ga. Feb. 12, 2014) (noting a mere difference of opinion regarding preferred course of treatment is not an Eighth Amendment violation; rather, a plaintiff must show he has a serious medical need and that defendant's response was "poor enough to constitute an unnecessary and wanton infliction of pain or risk of serious damage to future health.") (quoting Bingham, 654 F.3d at 1176, and Roe v. Elyea, 631 F.3d 843, 858 (7th Cir. 2011)).

---

[9] Gunderson points to allegations Plaintiff made during his deposition that Defendants Hall and Brooks lied to have Plaintiff placed on suicide watch. Plaintiff did not include any such allegations in his Complaint, (docs. 1, 42), nor did the Court sanction service of Plaintiff's Complaint based on any such allegations, (docs. 16, 41). Accordingly, the Court need not address these allegations.

To the extent Plaintiff contends Gunderson delayed his treatment[10], Plaintiff fails to create a genuine dispute as to this contention. In order for Plaintiff to show a delay in treatment exacerbated his condition, he must place verifying medical evidence in the record "to establish the detrimental effect of the delay[.]" Shaw v. Ajibade, No. CV311-027, 2013 WL 326208 at *6 (internal citation omitted). Plaintiff has failed to do so. In fact, the record is bereft of any medical evidence supporting such a claim. Nor can any perceived delay in receiving treatment here be deemed deliberate indifference, even in the absence of any verifying medical evidence. Kuhne v. Fla. Dep't of Corr., 618 F. App'x 498, 504 (11th Cir. 2015) ("'Deliberate indifference' can include 'the delay of treatment for obviously serious conditions where it is apparent that delay would detrimentally exacerbate the medical problem, the delay does seriously exacerbate the medical problem, and the delay is medically unjustified.'") (quoting Harper v. Lawrence Cty., 592 F.3d 1227, 1235 (11th Cir. 2010)).

Likewise, no reasonable juror could find Gunderson was deliberately indifferent to Plaintiff's serious medical needs on March 4, 2016. Gunderson asserts—and Plaintiff does not dispute—that he contacted the doctor Plaintiff saw for his shoulder injury, and that doctor told Gunderson Plaintiff should not have his arm in a sling. (Doc. 60-2, pp. 59, 68.) Gunderson was entitled to rely on that doctor's opinion and assessment of the situation and cannot be considered to have exhibited deliberate indifference toward Plaintiff's serious medical needs on March 4, 2016. While Plaintiff could argue Gunderson should have employed different tests and administered different treatments, these arguments provide inadequate bases for a deliberate indifference claim. Adams v. Poag, 61 F.3d 1537, 1545 (11th Cir. 1995) (reversing district court denial of summary judgment because "whether governmental actors should have employed

---

[10] The Court did not glean a delay in treatment claim from Plaintiff's Complaint but addresses this point based on Gunderson's Motion.

11

additional diagnostic techniques or forms of treatment 'is a classic example of a matter for medical judgment' and therefore not an appropriate basis for grounding liability under the Eighth Amendment.") (citing Estelle, 429 U.S. at 107); Waldrop v. Evans, 871 F.2d 1030, 1033 (11th Cir. 1989) (A "simple difference in medical opinion" does not give rise to a constitutional violation.). Plaintiff does not contradict Gunderson's Statement of Undisputed Material Facts or present any evidence in response to Defendant Gunderson's Motion on this point.

Plaintiff has failed to establish a genuine dispute of material fact which reveals that Gunderson acted in an objectively unreasonable manner. Consequently, Gunderson is entitled to summary judgment in his favor. The Court should **GRANT** Gunderson's Motion and **DISMISS** Plaintiff's claims against him.

## II.     Leave to Appeal *in Forma Pauperis*

The Court should also deny Plaintiff leave to appeal *in forma pauperis*. Though Plaintiff has, of course, not yet filed a notice of appeal, it is proper to address these issues in the Court's order of dismissal. See Fed. R. App. P. 24(a)(3) (trial court may certify that appeal of party proceeding *in forma pauperis* is not taken in good faith "before or after the notice of appeal is filed").

An appeal cannot be taken *in forma pauperis* if the trial court certifies that the appeal is not taken in good faith. 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3). Good faith in this context must be judged by an objective standard. Busch v. Cty. of Volusia, 189 F.R.D. 687, 691 (M.D. Fla. 1999). A party does not proceed in good faith when he seeks to advance a frivolous claim or argument. See Coppedge v. United States, 369 U.S. 438, 445 (1962). A claim or argument is frivolous when it appears the factual allegations are clearly baseless or the legal theories are indisputably meritless. Neitzke v. Williams, 490 U.S. 319, 327 (1989); Carroll v.

Gross, 984 F.2d 392, 393 (11th Cir. 1993). Stated another way, an *in forma pauperis* action is frivolous, and thus, not brought in good faith, if it is "without arguable merit either in law or fact." Napier v. Preslicka, 314 F.3d 528, 531 (11th Cir. 2002); see also Brown v. United States, Nos. 407CV085, 403CR001, 2009 WL 307872, at *1–2 (S.D. Ga. Feb. 9, 2009).

Based on the above analysis of Plaintiff's action and Gunderson's unopposed Motion for Summary Judgment, there are no non-frivolous issues to raise on appeal, and an appeal would not be taken in good faith. Thus, the Court should **DENY** Plaintiff *in forma pauperis* status on appeal.

## CONCLUSION

Based on the foregoing, I **RECOMMEND** the Court **GRANT** Gunderson's unopposed Motion for Summary Judgment and **DISMISS** Plaintiff's claims against Gunderson. I further **RECOMMEND** the Court **DENY** Plaintiff *in forma pauperis* status on appeal.

The Court **ORDERS** any party seeking to object to this Report and Recommendation to file specific written objections within fourteen (14) days of the date on which this Report and Recommendation is entered. Any objections asserting that the Magistrate Judge failed to address any contention raised in the Complaint must also be included. Failure to do so will bar any later challenge or review of the factual findings or legal conclusions of the Magistrate Judge. See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140 (1985). A copy of the objections must be served upon all other parties to the action. The filing of objections is not a proper vehicle through which to make new allegations or present additional evidence.

Upon receipt of Objections meeting the specificity requirement set out above, a United States District Judge will make a *de novo* determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in

whole or in part, the findings or recommendations made by the Magistrate Judge. Objections not meeting the specificity requirement set out above will not be considered by a District Judge. A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final judgment entered by or at the direction of a District Judge. The Court **DIRECTS** the Clerk of Court to serve a copy of this Report and Recommendation upon the parties.

**SO ORDERED** and **REPORTED and RECOMMENDED**, this 23rd day of February, 2018.

R. STAN BAKER
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA